[Civil Nos. 3963 and 3964. Filed October 3, 1938.]

[83 Pac. (2d) 283.]

GEORGE LUHRS, Appellant, v. CITY OF PHOE-
NIX, a Municipal Corporation; JOHN H.
UDALL, as Mayor of the City of Phoenix; and
WALTER THALHEIMER, CHARLES G. SUL-
LIVAN, HARRY T. DUFFY and W. A. CLARK,
as Members of the City Commission of the City
of Phoenix, a Municipal Corporation of the State
of Arizona, Appellees.

Mr. Terrence A. Carson, for Appellant.

Mr. I. A. Jennings, City Attorney, Mr. Hess Seaman, Assistant City Attorney, Messrs. Laney & Laney (of Counsel), for Appellees.

Mr. Joe Conway, Attorney General, and Mr. J. M. Johnson and Mr. W. E. Polley, Assistant Attorneys General, in Support of the Constitutionality of Laws Here Questioned.

ROSS, J.—The appellant, as a taxpayer of the city of Phoenix, in his own behalf and in behalf of others similarly situated, brought two suits against the city of Phoenix and the members of its commission, one challenging the constitutionality of chapter 40, Laws

of 1937, known as "the Police Pension Act of 1937," and the other challenging the constitutionality of chapter 43, Laws of 1937, known as "the Police, Peace Officers' and Firemen's Minimum Wage Act of 1937." General demurrers to the complaints were sustained and judgments entered for the defendants. Plaintiff appealed.

By stipulation, the cases were consolidated for the purposes of brief and argument on appeal. The principles governing in both cases are, in the main, the same and we shall dispose of them in one opinion.

Reference to the parties as they were in the trial court will be made.

Chapter 40 is entitled:

"An Act relating to pensions for aged and physically disqualified members of police departments, and for the creation of police pension funds and police pension boards."

This act creates in each city of the state having a population, according to the last federal census, of not less than 20,000 inhabitants, a police pension fund which shall be managed, controlled and distributed in accordance with its provisions. The act authorizes incorporated cities and towns having a population of less than 20,000 inhabitants to come under the police pension plan fund. It creates a pension board and prescribes its powers and duties, and provides for collection of a pension fund, and fixes eligibility of those entitled to pensions.

Chapter 43 is entitled:

"An Act relating to counties, cities, and towns, and prescribing minimum wages to be paid to police, peace officers, and professional fire-fighters."

It provides that any city or town having more than 7,000 inhabitants, as shown by the last federal census, having, or thereafter creating, a salaried police or

fire department, shall pay to every regularly appointed member thereof a minimum monthly wage in accordance with the classifications, periods of service, and corresponding minimum monthly wages as prescribed: Foot patrolman, third year and every year thereafter, $180 per month; hoseman, third year and every year thereafter, $180 per month. The act makes its violation a misdemeanor.

The theory of the complaint is that the city of Phoenix, having theretofore adopted a freeholders' charter under section 2 of article 13 of the Constitution, has the exclusive power over pensions for its police officers and over wages of its policemen and firemen and that, therefore, chapters 40 and 43, *supra,* in attempting to provide for pensions for policemen and minimum wages for policemen and firemen in said city, transgress the Constitution. A freeholders' charter such as defendant's was intended to give its possessor certain rights and privileges free from interference by the legislature, which rights and privileges have been variously described in legislation and decisions and in constitutions as of local concern or as municipal affairs. We first stated the rule in *Clayton* v. *State,* 38 Ariz. 466, 300 Pac. 1010:

"Where the subject is one of local interest or concern, or where though not of local concern the charter or legislation confers on the city express power to legislate thereon, both jurisdictions may legislate on the same subject. Where, however, the subject is of state-wide concern, and the Legislature has appropriated the field and declared the rule, its declaration is binding throughout the state."

This seems to be the general rule. The courts differ as to what activities of the city are of local interest or concern and therefore free from legislative interference. Some of such activities are so noticeably local or state-wide that they are easily assignable, while in

others the line of demarcation is very difficult of discernment, because the activity may be neither pre-dominantly local nor state-wide but may partake of both. Whether it is one or the other in such case depends upon whether the activity is carried on by the municipality as an agent of the state. If it is, it is of general or public concern. If it is exercised by the city in its proprietary capacity, it is a power incidental to home rule. *State* v. *City Council of Helena,* 102 Mont. 27, 55 Pac. (2d) 671. As to whether police and fire protection in municipalities are functions peculiarly local and, in home-rule cities matters of local concern or of state-wide concern subject to regulation by the state, the courts are not in agreement. The following jurisdictions hold that such functions are local: *Popper* v. *Broderick,* 123 Cal. 456, 56 Pac. 53; *Jackson* v. *Wilde,* 52 Cal. App. 259, 198 Pac. 822; *City of Pasadena* v. *Charleville,* 215 Cal. 384, 10 Pac. (2d) 745; *City of Wewoka* v. *Rodman,* 172 Okl. 630, 46 Pac. (2d) 334; *Smith* v. *City Com. of Flint,* 258 Mich. 698, 242 N. W. 814; *City of Lexington* v. *Thompson,* 113 Ky. 540, 68 S. W. 477, 101 Am. St. Rep. 361, 57 L. R. A. 775.

There are a number of jurisdictions that take a contrary view and, since our constitutional provision for freeholders' charters is practically the same as that of the state of Missouri, we quote from one of the decisions of that state:

"It would be a step backward for us now to say that the state of Missouri cannot provide a police system for its great cities. It is a mistaken view to urge that the cities alone are interested in this matter of a police force adequate to maintaining the public peace and safety of our citizenship. The state has a vital interest. The citizens of the state, and all parts of it, are forced to these metropolitan centers for business and other reasons. They may not linger long, but, while there, they are entitled to that protection which

only an adequate and efficient police force can give. It is not for the cities to say to the state: We will give your citizens just such protection as we think is best. Nor can such cities say to the state: You may man and control the police force if you desire, but if so we will starve your system to death. We hold the purse strings. These municipal corporations are subordinate to the sovereign power of the state, and whilst they do, in a sense, hold the purse strings, they do so by the consent of the state. Without the authority of the sovereign, they would not even have a purse, much less the strings of one. The power which gave them the purse can limit the use of it. The power which placed upon that purse the strings can loosen the strings." *State ex rel. Reynolds* v. *Jost,* 265 Mo. 51, 175 S. W. 591, 594, Ann. Cas. 1917D, 1102.

The Missouri cases are reviewed in the recent case of *Kansas City, Missouri,* v. *J. I. Case Threshing Machine Co.,* 337 Mo. 913, 87 S. W. (2d) 195, and therein it is stated (p. 202):

"It is, of course, sometimes difficult to determine the border line between governmental functions and corporate functions. It is not necessary to attempt to discuss and define such various functions here. However, certain functions have, by this court, definitely been determined governmental, the control of which remains in the state. The police power is one. A municipal corporation has no inherent police power, but derives it solely from delegation by the state. 19 R. C. L. 800, § 108; 43 C. J. 205, § 204. 'The protection of life, liberty, and property, and the preservation of the public peace and order, in every part, division, and subdivision of the state, is a governmental duty, which devolves upon the State, and not upon its municipalities, any further than the state, in its sovereignty, may see fit to impose upon or delegate it to the municipalities.' *State ex rel. Hawes* v. *Mason,* 153 Mo. 23, loc. cit. 43, 54 S. W. 524, 529; see, also, *State ex rel. Reynolds* v. *Jost,* 265 Mo. 51, 175 S. W. 591, Ann. Cas. 1917D, 1102; *Strother* v. *Kansas City,* 283 Mo. 283, 223 S. W. 419; *State ex rel. Beach et al., Board of Police Commissioners* v. *Beach,* 325 Mo. 175, 28 S. W.

(2d) 105. Some of the other matters, which are purely governmental functions, are those pertaining to suffrage and elections, education, regulation of public utilities, and administration of justice. *Ewing* v. *Hoblitzelle,* 85 Mo. 64; *State ex rel. Garner* v. *Missouri & K. Tel. Co.,* 189 Mo. 83, 88 S. W. 41; *State ex rel. Kirkwood* v. *Public Serv. Comm.,* 330 Mo. 507, 50 S. W. (2d) 114; see, also, cases cited; *St. Louis* v. *Dorr,* 145 Mo. 466, loc. cit. 481, 41 S. W. 1094, 46 S. W. 976, 42 L. R. A. 686, 68 Am. St. Rep. 575. These may be delegated to or taken away from the city in whole or in part, within the wisdom of the Legislature.''

In *Van Gilder* v. *City of Madison,* 222 Wis. 58, 267 N. W. 25, 268 N. W. 108, 105 A. L. R. 244, it was held that the matters of police and fire protection were of state-wide concern and subject to regulation by the legislature, and not the city of Madison under its home-rule charter, the court stating (p. 32):

''The determination of other courts and a consideration of the fundamental reasons which underlie those determinations require us to hold that the preservation of order, the enforcement of law, the protection of life and property, and the suppression of crime are matters of state-wide concern. It is true that municipalities deal with many of these subjects and have done so for many decades. However, their power to deal with these matters is not derived from the home-rule amendment but from the Legislature through legislative enactment. These powers so vested by the Legislature in the municipalities may be withdrawn, modified, or dealt with as the public interest requires in the opinion of the Legislature.''

As grounds for arriving at the conclusion, the court says:

''So far as we have been able to discover in all jurisdictions where the question has arisen because of a conflict between a charter ordinance adopted under a home-rule provision of a Constitution and an act of the Legislature, the matter of police and fire protection has been held to be a 'matter of state-wide con-

cern' for the following reasons stated briefly and without exposition: (1) The Legislature exercises a sovereign power of the people with respect to legislation, its action in that regard being limited only by the State and Federal Constitutions; (2) the preservation of order, the protection of life and property, and the suppression of crime are primary functions of all civilized states; (3) municipal subdivisions of the state are merely agencies of the state in respect to the performance of these primary obligations of the state; (4) the Legislature unless limited by constitutional provisions has the power to rearrange the laws by which this primary duty is discharged as the needs of the state may require; (5) while a considerable part of the state's duty in these several respects has been delegated to municipalities, towns, villages, and counties, 'enforcement of the law, the preservation of order, the protection of persons and property and the suppression of crime' must always be matters of state-wide concern. . . . ''

It was held in this case that the salaries of policemen and firemen were matters of state-wide concern.

The jurisdictions that do not have freeholders' charters and also those that have are in accord in holding that the matter of providing pensions for superannuated policemen is of state-wide concern, and most of them agree that the matter of providing for and regulating city fire departments is state-wide. We cite some of the cases so holding. *State* v. *Love,* 89 Neb. 149, 131 N. W. 196, 34 L. R. A. (N. S.) 607, Ann. Cas. 1912C 542; *Adams* v. *City of Omaha,* 101 Neb. 690, 164 N. W. 714; *State* v. *Morris,* 199 Ind. 78, 155 N. E. 198; *State* v. *Mason,* 153 Mo. 23, 54 S. W. 524.

We have held that a policeman of the city of Phoenix in the regular line of duty is performing a governmental function, *City of Phoenix* v. *Greer,* 43 Ariz. 214, 29 Pac. (2d) 1062; that a garbage collector in the line of duty is performing a governmental function, *Jones* v. *City of Phoenix,* 29 Ariz. 181, 239 Pac. 1030; that mini-

mum wages on public works for manual and mechanical labor, done for a city with a freeholders' charter, is of state-wide concern, *City of Phoenix* v. *Drinkwater,* 46 Ariz. 470, 52 Pac. (2d) 1175; *State* v. *Jaastad,* 43 Ariz. 458, 32 Pac. (2d) 799; and that taxes and tax liens are of state-wide concern and not local or municipal, *Home Owners' Loan Corp.* v. *City of Phoenix,* 51 Ariz. 455, 77 Pac. (2d) 818.

In the Jaastad case, *supra,* it was contended that a city with a freeholders' charter was not bound to observe the minimum wage law enacted by the legislature for labor on public works being carried on by the city. The cases cited in support of such contention from California, Kentucky and Michigan we refused to follow. Cases from these states are relied upon by plaintiff in this case. The correctness of the decision in *City of Lexington* v. *Thompson, supra,* is seriously questioned, if not impliedly repudiated, in *Board of Trustees of Policemen's Pension Fund* v. *Schupp,* 223 Ky. 269, 3 S. W. (2d) 606, reading p. 610.

In *State* v. *Tibbetts,* 21 Okl. Cr. 168, 205 Pac. 776, the question was whether the legislature could fix the hours and wages of laborers upon public works in a city with a freeholders' charter, and the court held that the legislature could so do, and stated (p. 777):

"We think there is no merit in the claim that the state has no interest in regulating the wages of labor or the hours of labor affecting employment in the installation of a municipal sewer system in a city having a special charter form of government. The police power is an inherent attribute of state sovereignty, under which the state may establish wholesome and reasonable laws and regulations designed to promote the good order and general welfare of its subjects.

"There is no inherent police power in municipalities to enact police regulations. Municipalities have only such police power as is delegated to them by general laws and by special charters. 19 R. C. L. Municipal Corporations, § 108. There is no delegation of this

power, express or implied, to the city of Pawhuska in the Constitution or the general laws of this state. Section 3 of article 18 of our Constitution, Okl. St. Ann. Const. art. 18, § 3 (a), provides that special charters shall be consistent with and subject to the Constitution and laws of this state. The regulation of the hours of labor is a state function, designed to promote the general welfare of all the people of the state, which has not been and possibly cannot be delegated to a municipality. A municipality is a creature of the state, exercising delegated powers only, and cannot, under our Constitution, arrogate to itself governmental powers in conflict with the general laws and fixed policies of state government. *Keefe* v. *People,* 37 Colo. 317, 87 Pac. 791, 8 L. R. A. (N. S.) 131; 19 R. C. L. Municipal Corporations, §§ 35, 36, 39.''

We conclude that the matter of pensioning policemen, as also the matter of fixing a minimum wage for policemen and firemen, is of state-wide concern, and that chapters 40 and 43, *supra,* are valid pieces of legislation.

We think the preservation of order and the protection of life and property and the suppression of crime are primary functions of the state; that the entire state is interested in these matters, and that they are proper subjects for general laws.

Plaintiff's next proposition is:

''That both acts attempt to levy taxes under the police power of the state, which right belongs purely to the city of Phoenix, and these acts delegate to the legislature of Arizona the right to levy said taxes.''

This proposition hinges on the soundness of plaintiff's first proposition—the one just decided. If pensions for retried policemen and dependents and minimum wages for policemen and firemen of freehold cities are of local interest or concern only, then chapters 40 and 43 would fall, but if these matters are of state-wide concern, such legislation is valid, including the features authorizing the incurring of the expenses

thereof. The legislature has plenary power over taxes. The legislature does not get its power or right to lay taxes upon property by delegation. This power is inherent.

■ The third proposition urged by plaintiff is:

"Said laws are both special laws for the reason that the classification set forth is arbitrary and does not make provision for increase or decrease of population, and does not provide for an automatic change of status; that both laws are special laws because they attempt to levy taxes for a special purpose."

Section 1 of article 13 of the state Constitution authorizes the legislature to pass general laws classifying cities and towns according to population. Chapter 40 creates a police pension fund in each city of not less than 20,000 population "according to the last federal census," and authorizes incorporated cities and towns of less population to create such a pension fund by ordinance. Chapter 43 prescribes a minimum wage for third-year foot patrolmen and third-year hosemen in any city or town of more than 7,000 inhabitants, "as shown by the last federal census," having, or that thereafter creates a salaried police or fire department. It is claimed by plaintiff that only cities that had 20,000 population in 1930, that being the last federal census before chapter 40 was enacted, and cities and towns that had more than 7,000 inhabitants in 1930, that being the last federal census before chapter 43 was enacted, come within the terms of such chapters. If this contention is correct, then the chapters are special laws, as they would be applicable only to those cities and towns that had the named population in the year 1930. This construction should not be given unless the language employed makes it imperative. If it can be gathered from the whole context of these chapters that they were intended to cover cities and towns with the populations named, as shown by the

federal census in 1930, as also cities and towns with such populations as shown by any subsequent federal census, we should give them that construction. This would evidently carry out the intent of the legislature and that is what should be done if it is possible.

Looking to chapter 40, it will be noticed that the police pension fund is mandatory on cities with 20,000 inhabitants and permissive as to cities and towns of less population. Section 4 of such chapter uses this significant language: ''In cities in which this act is or shall *hereafter* become mandatory . . . '' (Italics ours.) This provides for future growth of cities and automatically includes them in the pension fund class when they grow to the size of 20,000 inhabitants.

Chapter 43 applies only to cities and towns of more than 7,000 inhabitants, as shown by the last federal census. As we view it, this does not mean just the municipalities that had more than 7,000 inhabitants as shown by the last federal census before chapter 43 was passed, but it means municipalities having such population as shown by any subsequent federal census. In other words, it is elastic and was intended to cover all municipalities in the future as 'well as those presently qualified.

Both chapters are prospective as well as retrospective.

The facts in the case of *Bravin* v. *City of Tombstone*, 4 Ariz. 83, 33 Pac. 589, do not fit the present situation. There the legislature provided

''that in all cities . . . in which the total vote cast at the general election held therein on the fourth day of November, 1890, was less than six hundred'' (p. 590)

the duties of the city assessor and tax collector should be transferred to the chief of police. At that election (on Nov. 4, 1890) there was but one city in Arizona in which the vote was less than 600 and that was Tomb-

stone. The court held that the act was special and in violation of the Harrison Act, sec. 1, 48 U. S. C. A., sec. 1471. We think the proper rule is stated by that court as follows:

" 'If a statute is plainly intended for a particular case, and looks to no broader application in the future, it is special or local, and if such laws are prohibited it is unconstitutional.' Suth. St. Const., § 129. A classification of cities may be made, based upon population; upon the number of votes cast from time to time; upon the extent or character of a particular business or industry done or pursued within their limits, etc. And this even though but one city in the state or territory comes within the provisions of the statute at the time of its enactment. But the statute must be elastic, so that other cities may, as they attain the requisite conditions, come within the classification and within the operation of the statute. We think the rule may safely be stated to be that the classification of municipalities, and the incidental imposition of different obligations and granting of different powers to them according to such classification, must be such that other municipalities may, upon the attainment of the conditions characterizing any particular class, enter that class, and the conditions themselves must be not only possible, but reasonably probable of attainment.' '

Chapters 40 and 43 clearly contemplate that cities in the future that attain the stipulated requisite conditions automatically come within the terms of the law.

 Statutes very similar to chapters 40 and 43, classifying cities and towns according to population, have been sustained in other jurisdictions. In *State* v. *Russell*, 119 Kan. 266, 237 Pac. 877, a provision of the statute, Laws 1925, chapter 134, "that in any county having a population . . . according to the last preceding census . . . " was under consideration. It was insisted such statute was a special statute and repugnant to the state Constitution. The court, however, said:

"The classification of the statute under consideration is based on population. The statute may now apply to only one county; next year it may apply to two; in the future, it will apply to any county which comes within its provisions. For that reason, the statute is general, and operates uniformly in all counties to which it applies. It does not violate section 17 of article 2 of the Constitution of this state."

There is found in *State* v. *Downs,* 60 Kan. 788, 57 Pac. 962, the following, which we think is a fair statement of the rule (p. 964) :

"An act general in its provisions, but which can presently apply to only one city on account of there being but one of requisite population or other qualification, but which was designed to and can in all substantial particulars apply to other cities as they become possessed of the requisite population or other qualification, cannot be regarded as a special act."

Some of the other cases are : *Bishop* v. *City of Tulsa,* 21 Okl. Cr. 457, 209 Pac. 228, 27 A. L. R. 1008; *Martin* v. *Superior Court of Sacramento County,* 194 Cal. 93, 227 Pac. 762; *Board of Trustees of Policemen's Pension Fund* v. *Schupp, supra; State* v. *Peterson,* 180 Minn. 366, 230 N. W. 830; *Mathews* v. *City of Chicago,* 342 Ill. 120, 174 N. E. 35; *State* v. *Board of Trustees of Policemen's Pension Fund,* 121 Wis. 44, 98 N. W. 954. See, also, 12 Am. Jur. 170, sec. 489.

Plaintiff attacks the provision of chapter 43 classifying foot patrolmen and hosemen and fixing their minimum salaries after two years of service. If such employees, their functions and salaries are of local concern and not state-wide, such provisions are not within the competency of the legislature and are void. But, after much thought and investigation, we have concluded that such matters are of state-wide concern. The suggestion that such legislation is special is not true as it affects alike all persons in the class. *Hunt* v. *Mohave County,* 18 Ariz. 480, 162 Pac. 600.

We do not deem it necessary to consider other points urged as they are covered by what we have already said.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.