773 P.2d 1026

**PETITIONERS FOR DEANNEXATION in re Petition for Deannexation from the City of Goodyear, Petitioners–Appellees,**

v.

**CITY OF GOODYEAR, a municipal corporation; Maricopa County, a political subdivision of the State of Arizona; Max McCully, an individual; Wanda Sanders, an individual; and Gail Piggett, an individual, Respondents–Appellants.**

**No. 1 CA–CIV 88–110.**

Court of Appeals of Arizona, Division 1, Department B.

March 23, 1989.

Review Granted June 20, 1989.

**468**

Snell & Wilmer by Lonnie J. Williams, Jr., and Jeffrey Messing, Phoenix, for petitioners-appellees.

Tom Collins, Maricopa County Atty. by John W. Paulsen, Phoenix, for respondent-appellant Maricopa County.

Bill Stephens & Associates, P.C. by Richard A. Alcorn, and Dennis A. Sever, Phoenix, for respondents-appellants.

Thomas R. Judd, Goodyear City Atty., Goodyear, for respondent-appellant City of Goodyear.

## OPINION

JACOBSON, Judge.

The City of Goodyear (Goodyear) appeals from a judgment that permitted deannexation of a portion of Goodyear's city limits pursuant to 1986 Ariz.Sess.Laws ch. 45, § 4, as amended by 1986 Ariz.Sess.Laws ch. 414, § 1 (deannexation law). The sole issue we reach on appeal is whether the act giving rise to the deannexation is a "local or special" law and therefore unconstitutional.

## HISTORICAL BACKGROUND

In the 1970's and 1980's a spate of municipal annexations occurred in Arizona that appeared to have no relationship to legitimate municipal concerns. *See Glick v. Town of Gilbert,* 123 Ariz. 395, 599 P.2d 848 (App.1979). *Glick* indicated that some cities were engaging in "strip" annexation, that is, were artificially extending their boundaries to include potentially high value taxable areas, or to defend against the encroachment of equally aggressive neighboring municipalities. *See also* Report of Arizona State Legislative Joint Interim Meeting on Urban Growth Policy, Oct. 31, and 1985, Jan. 7, 1986; Maricopa and Pima Counties Neighborhood Position on Annexation Reform, Feb. 1, 1986. In response to these concerns, the Legislature in 1985 initially placed a statewide moratorium on all annexations. A.R.S. § 9-471.

The Legislature then undertook a comprehensive revision of the annexation laws, which made more stringent the statutory requirements for annexation. *See* A.R.S. § 9-471 (effective April 10, 1986). As part of this process, and in recognition of past abuses, the Legislature enacted a provision that would allow a portion of a previously annexed area to be "deannexed." Representative Denny stated, "the problems that the area of Litchfield Farms [the property under consideration here] has had with strip annexations by the cities of Avondale, Goodyear, Phoenix and Glendale," could be cured by a deannexation statute that "would provide an appeals process for the first time in the State of Arizona." Minutes of Meeting, House Committee on Counties and Municipalities, Feb. 6, 1986, at 2.

The original bill dealing with deannexation provided that:

A. The superior court shall order the deannexation of territory from a city or town and return the territory to the juris-

diction of the county if all of the following conditions are satisfied:

.   .   .   .   .

H.B. 2189, 37th Legis., 2d Reg.Sess. (1986). This bill, as introduced, had statewide application. The bill that was subsequently passed was significantly narrower in scope:

A. The superior court shall order the deannexation of territory from a city or town *having a population of less than ten thousand persons according to the 1980 United States decennial census within a county having a population in excess of one million two hundred thousand persons according to the 1980 United States decennial census* and return the territory to the jurisdiction of the county if all of the following conditions are satisfied:

.   .   .   .   .

(Emphasis added.) *See* Senate Committee Amendments to H.B. 2189, Mar. 21, 1986, at 3.

The bill, as passed and as signed by the Governor, limited its applicability to the population according to the 1980 census and only affected Maricopa County and the following thirteen cities within Maricopa County: Gilbert, Avondale, Guadalupe, Goodyear, Tolleson, Surprise, Wickenburg, El Mirage, Buckeye, Youngtown, Gila Bend, Carefree, and Cave Creek.

After being signed by the Governor, the act, in the same legislative session, was further amended to provide that deannexation was only applicable to cities or towns having a population of eleven thousand according to the *last special* United States census and that the petitions for deannexation be filed prior to September 1, 1987. *See* Conference Committee Amendments to H.B. 2217, May 5, 1986, at 1. The result of this amendment was to exclude only Gilbert from the list of cities affected by the law. Furthermore, because the law became effective on August 23, 1986, it was only applicable for a thirteen-month period. During this "window period" the residents of Goodyear sought deannexation.

Against this background Goodyear contends that the law under which petitioners

sought deannexation is unconstitutional under Ariz. Const. art. IV, pt. 2, § 19, which provides in pertinent part:

No local or special laws shall be enacted in any of the following cases, that is to say:

.   .   .   .   .

20. When a general law can be made applicable.

The trial court upheld the constitutionality of the deannexation statute under the authority of *Picture Rocks Fire District v. Pima County*, 152 Ariz. 442, 733 P.2d 639 (App.1986).

DISCUSSION

As an initial matter citing *Valley National Bank v. Glover*, 62 Ariz. 538, 159 P.2d 292 (1945), petitioners contend that when a court is faced with a challenge under subsection 20 of Ariz. Const. art. IV, pt. 2, § 19 (the general versus the special law provision), the Legislature is the sole judge of whether a general law could suffice. *Glover* in turn relied upon *Fairfield v. Huntington*, 23 Ariz. 528, 205 P. 814 (1922), in which the general attitudes of courts in the last century as to "special/local" law prohibitions was reflected. These courts historically viewed such provisions as advisory only, involving a matter of legislative discretion not subject to judicial review. *See, e.g., State ex rel. Sanche v. Webb*, 110 Ala. 214, 28 So. 462 (1896).

As one commentator stated:

It is important to remember the historical context in which the first state constitutions appeared. Contrary to the view prevailing today—that constitutional protections exist to be enforced by the courts—concepts of judicial review were in their infancy. In other words, judicial enforcement of bill of rights provisions was probably far from their framers' minds. Thus, in many ways these early provisions, sometimes referred to only as "principles of government," can be viewed as descriptive rather than normative.

Williams, *Equality Guarantees in State Constitutional Law*, 63 Tex.L.Rev. 1195, 1205 (1985) (footnotes omitted).

Despite this professed acquiesence in the legislative determination, both *Glover* and *Fairfield* evaluated the legislation in question to determine whether it had a valid legislative purpose. Moreover, the *Glover/Fairfield* rationale has not been utilized by the Arizona Supreme Court in subsequent cases dealing with the applicability of this section of our constitution. Rather, the court has analyzed legislation to determine whether it passed constitutional muster, instead of abdicating that inquiry to vague concepts of "legislative discretion." We therefore undertake that analysis here.

At the outset, we must determine the standard for evaluating the constitutionality of an act under the provisions of Ariz. Const. art. IV, pt. 2, § 19. Petitioners contend that if the legislation is constitutional under an equal protection analysis, then it is constitutional under a special/local law analysis. This contention is based upon *Picture Rocks Fire District v. Pima County.*

In *Picture Rocks*, Division Two of this court was faced with legislation strikingly similar to that under consideration here: a law that permitted property owners in a county having more than 250,000 residents but less than one million residents, according to the 1980 U.S. Decennial Census, to withdraw from a fire district. By the express terms of that legislation, it could only apply to Pima County and only to fire districts that were formed or property annexed after January 1, 1977.

The court upheld the constitutionality of the legislation against an attack that it violated the "special/local" law prohibition, utilizing only an equal protection analysis. In doing so, it adopted for a special/local law problem the same equal protection analysis employed in *Williamson v. Lee Optical*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955), and concluded that:

> [T]he reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others.

*Picture Rocks*, 152 Ariz. at 446, 733 P.2d at 643, *quoting Williamson*, 348 U.S. at 489, 75 S.Ct. at 465.

Having thus disposed of the narrow application of the legislation by approving a "piecemeal approach," the court then inquired "whether the classifications drawn by the legislature have a rational basis." *Id.* This analysis is perfectly acceptable if Ariz. Const. art. IV, pt. 2, § 19 (special law prohibitions) has exactly the same meaning as Ariz. Const. art. II, § 13 (equal protection provisions).

In our opinion, these provisions are not the same. Our constitutional framers did not confine themselves to an equal protection clause; they deliberately included a special law provision as well. Constitutional history indicates they did so for a reason. Fear of legislative favoritism had existed in Arizona since territorial days. By enacting the Harrison Act, 48 U.S.C. § 1471, 24 Stat. 170 (1886), Congress attempted to circumvent the evils of special legislation in territories. The Act forbade a territory from passing a special or local law.[1] In adopting a constitutional provision similar to the Harrison Act, the framers acknowledged that specific prohibitions against special laws were necessary and desirable. *See State v. Levy's*, 119 Ariz. 191, 580 P.2d 329 (1978); *Udall v. Severn*, 52 Ariz. 65, 79 P.2d 347 (1938) ("In 1912, the makers of the Constitution were convinced, after some 25 years of experience, that this [the Harrison Act's prohibition against special laws] was a wise and salutary policy, and wrote the same provision into the Constitution in even more stringent form.").

As was noted in *State v. Levy's*, even though legislation may have a rational basis for classification purposes and thus satisfy equal protection considerations, the

---

1. As early as 1891, the delegates at the Arizona Constitutional Convention were aware of national and local problems and were careful to prevent vested interests and monopolies from obtaining a foothold in the future state. *See* G. Bakken, *Rocky Mountain Constitution Making, 1850–1912*, 11–12 (1987).

law may nonetheless violate Ariz. Const. art. IV, pt. 2, § 19 as a local law. 119 Ariz. at 192, 580 P.2d at 330. *Levy's* concerned a tax exemption applicable only to communities within thirty miles of the Mexican border. The court found the exemption unconstitutional, even though a rational basis for that classification existed. The court stated:

> Certainly it must be acknowledged that the border businesses have a more acute problem. Nevertheless, the exemption provided by the Legislature does not treat all in the same fashion. The exemption is based on an arbitrary line drawn 30 miles from the Mexican border. The Arizona Constitution under art. 4 Pt. 2 § 19(9) forbids the enactment of such a law.

119 Ariz. at 192–93, 580 P.2d at 330–31.

The difference between equal protection provisions and special law provisions has been recognized in other jurisdictions. The Illinois Supreme Court has noted that the evil sought to be avoided by equal protection provisions is the arbitrary and invidious discrimination *against* a person or class of persons, while the reason underlying prohibitions against special legislation is the undesirability of discrimination in *favor* of a select group. *Illinois Polygraph Soc. v. Pellicano*, 83 Ill.2d 130, 46 Ill.Dec. 574, 414 N.E.2d 458 (1980). However, special law prohibitions have a broader egalitarian purpose. As the Kansas Supreme Court has stated:

> The inherent vice of special laws is that they create preferences and establish irregularities.... The members [of the legislature] whose particular constituents are not affected by a proposed special law become indifferent to its passage. It is customary, on the plea of legislative courtesy, not to interfere with the local bill of another member; and members are elected, and re-elected, on account of their proficiency in procuring for their respective districts special privileges in the way of local or special laws. The time which the Legislature would otherwise devote to the consideration of measures of public importance is frittered away in the granting of special favors to private or corporate interests or to local communities. Meanwhile in place of a symmetrical body of statutory law on subjects of general and common interest to the whole people, we have a wilderness of special provisions, whose operation extends no further than the boundaries of the particular [locality] to which they were made to apply.

*Anderson v. Board of Comm'rs*, 77 Kan. 721, 95 P. 583, 586 (1908).

The special/local law provision requires the Legislature to apply its collective wisdom and individual responsibility to legislative problems. This significant consideration is overlooked in *Picture Rock's* equal protection "piecemeal," rational basis approach. When then does a law, albeit rationally based, become subject to the restriction that special laws are prohibited if a general law will suffice? The answer to this question was forecast almost one hundred years ago:

> A classification of cities may be made, based upon population; upon the number of votes cast from time to time; upon the extent or character of a particular business or industry done and pursued within their limits, etc. And this even though but one city in the state or territory comes within the provisions of the statute at the time of its enactment. But the statute must be elastic, so that other cities may, as they attain the requisite conditions, come within the operation of the statute. We think the rule may safely be stated to be that the classification of municipalities, and the incidental imposition of different obligations and granting of different powers to them according to such classification, must be such that other municipalities may, upon the attainment of the conditions characterizing any particular class, enter that class, and the conditions themselves must be not only possible, but reasonably probable, of attainment.

*Bravin v. Mayor and Common Council*, 4 Ariz. 83, 89–90, 33 P. 589 (1893). As the court later restated: "If a statute is plainly intended for a particular case, and looks to no broader application in the future, it is

special or local, and ... it is unconstitutional." *Luhrs v. City of Phoenix*, 52 Ariz. 438, 83 P.2d 283 (1938) *quoting Bravin v. Mayor and Common Council.*

Although we hesitate to declare a law unconstitutional, our courts since territorial days have not hesitated to declare a legislative act a special law when the facts so required. *See, e.g., Barsema v. Susong*, 156 Ariz. 309, 751 P.2d 969 (1988) (impermissible to accord special treatment to certain medical malpractice defendants); *Barbee v. Holbrook*, 91 Ariz. 263, 371 P.2d 886 (1962) (law authorizing reimbursement of officials void as a special law because intended for a particular case with no application in future); *Graham County v. Dowell*, 50 Ariz. 221, 71 P.2d 1019 (1937) (act directing construction of public highway by special act unconstitutional); *City of Prescott ex rel. Lodge v. O'Sullivan*, 46 Ariz. 551, 53 P.2d 69 (1935) (law changing charter requirements for publication of ordinances unconstitutional because it applied only to City of Prescott); *State v. Childs*, 32 Ariz. 222, 257 P. 366 (1927) (law permitting only registered pharmacists to sell drugs in original package void as special law); *Bravin v. Mayor and Common Council*, 4 Ariz. 83, 33 P. 589 (1893) (legislation void under Harrison Act because of limited application of population classification).

Our courts have also invalidated laws as specifically violative of Ariz. Const. art. IV, pt. 2, § 19(20). In one case, the court invalidated an initiative act that provided most counties the option to establish civil service systems but required class I counties to do so, finding it a "special law, when a general law could be made applicable." *Hernandez v. Frohmiller*, 68 Ariz. 242, 204 P.2d 854 (1949). The court found that "such a distinction ... [that] thereby impose[d] greater burdens on first class counties and grant[ed] greater privileges to other counties" was improper. *Id.* at 257, 204 P.2d at 863.

Illinois found equally compelling its comparable prohibition against special laws when a general law could be applicable. *See Grace v. Howlett*, 51 Ill.2d 478, 283

N.E.2d 474 (1972). In *Grace v. Howlett*, the court invalidated a challenged statute pursuant to the constitutional prohibition against special laws. In doing so it rejected the rational basis test as an unsatisfactory method of special law analysis. The court reasoned that it could not "abdicate its constitutional responsibility to determine whether a general law can be made applicable, [that] the available scope for legislative experimentation with special legislation is limited and this court cannot rule that the legislature is free to enact special legislation simply because 'reform may take one step at a time.'" *Id.* 283 N.E.2d at 479.

The Alaska Supreme Court similarly invalidated a law under Alaska's special legislation clause, finding the unique characteristic of a city's location unpersuasive to justify special treatment. *Abrams v. State*, 534 P.2d 91, 94–95 (Alaska 1975). The court posited: "If this is all that is needed to justify a departure from general law, then the legislature could, by special act, [incorporate new boroughs] on an ad hoc basis. We do not think this is what the framers of our constitution intended." *Id.* at 95. The court concluded that when a statute is challenged as special or local the ultimate question is whether the act is "reasonably related to a matter of *common* interest to the *whole* state." *Id.* at 94 (emphasis added).

■ We conclude that in analyzing a purported violation of the special/local law prohibition, it is insufficient merely to employ an equal protection/rational basis investigation. True, the court must first ascertain whether the law has a rational relationship to a legitimate legislative objective. If it does not, of course, our inquiry is over. But if it does, we must further decide if the act legitimately classifies by population, geography, or time limitations. If we find a legitimate classification, we must then determine if the act permits other individuals or entities to come within the class, and thus within operation of the law, within a reasonable time, or if at all. *See, e.g., Arizona Downs*, 130 Ariz. 550, at 558, 637 P.2d

1053, at 1061 (1981) (law special if it has no broader application in the future); *Barbee,* 91 Ariz. 263, 371 P.2d 886 (law clearly special because no other city may come within terms); *Fund Manager v. Corbin,* 157 Ariz. 324, 757 P.2d 128 (App.1988) (law authorizing Fund Manager's contracting powers not impermissible special law because it has a potentially broader application in the future); Adams, *Legislation by Census: The Alabama Experience,* 21 Ala. L.Rev. 401, 415 (1969) ("All general acts of local application depend for their 'generality' on the *possibility* of prospective operation.").

■ Applying this standard to the statute in issue, we find the legislature might rationally perceive that areas annexed by small cities (population under 11,000) may have greater cause to deannex than those annexed to larger cities because of the smaller cities' inability to provide services.[2] However, the law's limited geographical focus (Maricopa County) and time limitations (applicable only to 1985 census and cities that file by September 1, 1987) make it impossible for similarly situated small cities or towns in other counties in the state to come within its operation in the future. The law does not classify; rather it specifies its coverage to a limited number of cities within only one county, Maricopa. *See* Sutherland, *Statutory Construction* § 40.09 ("An act limited to a particular census is a form of identification and is invalid as no subsequent changes in population would enable other communities to come within the qualifications of the act."); 2 E. McQuillin, *Municipal Corporations* § 4.72 at 162 (3d ed. 1988). By excluding large cities, the legislature has immunized them from appeals by disgruntled individuals in annexed territories;[3] by excluding other counties statewide, the legislature has similarly immunized cities of any size in counties outside Maricopa. Such favorit-

ism subverts the explicit mandates of our constitution and contravenes the admonition against imposing greater burdens on some while granting privileges to others. *See Hernandez v. Frohmiller.* A general law would provide a remedy to individuals in areas annexed by small or large cities in any county in the state. The deannexation law's limited application, coupled with its creation of a window of time after which no other city or town may come within its purview, violates the prohibition against special legislation. We thus hold the deannexation law unconstitutional.[4]

SEVERABILITY

■ The remaining sections of A.R.S. § 9–471 remain in full force. We will not declare an entire act unconstitutional if constitutional portions can be separated. *See Cohen v. State,* 121 Ariz. 6, 588 P.2d 299 (1978); *State v. Rambeau,* 152 Ariz. 174, 730 P.2d 883 (App.1986). The test for severability is to ascertain legislative intent. *Cohen.* After striking the deannexation provisions, the remaining provisions of A.R.S. § 9–471 clearly and unambiguously provide for annexation procedures in the state. We therefore conclude section 4 is severable from A.R.S. § 9–471.

CONCLUSION

The deannexation law violates the Arizona Constitution's prohibition against special or local laws. We thus reverse the trial court's decision to permit appellees to deannex the subject property from the City of Goodyear.

FIDEL, P.J., and EUBANK, J., concur.

---

**2.** Petitioners do not dispute Goodyear's contention that annexation abuses were not limited to small municipalities or Maricopa County. The legislative history of the act cited, *supra,* supports this contention.

**3.** The May 5, 1986, amendment to the act permitted one city, Gilbert, (population 12,102 in

the last special census as opposed to 5,717 by the 1980 decennial census) to escape its operation.

**4.** Because this issue is dispositive, we need not reach the other constitutional and procedural issues raised.