800 P.2d 1251

**REPUBLIC INVESTMENT FUND I, an Arizona general partnership, Petitioner/Appellee,**

**v.**

**The TOWN OF SURPRISE, a body politic; and Maricopa County, a political subdivision of the State of Arizona, Respondents/Appellants.**

**PETITIONERS FOR DEANNEXATION in re Petition for Deannexation From the City of Goodyear, Petitioners–Appellees,**

**v.**

**CITY OF GOODYEAR, a municipal corporation; Maricopa County, a political subdivision of the State of Arizona; Max McCully, an individual; Wanda Sanders, an individual; and Gail Piggett, an individual, Respondents–Appellants.**

Nos. CV–89–0048–PR, CV–89–0172–PR.

Supreme Court of Arizona, En Banc.

July 31, 1990.

Property owners sought deannexation of property from cities. Cities challenged constitutionality of deannexation statute. The Superior Court, Maricopa County, Nos. CV 87–09326, CV 87–19086, Alan S. Kamin and J.D. Howe, JJ., upheld constitutionality of statute. Cities appealed. The Court of Appeals affirmed in one case in unpublished opinion and reversed in another case, 160 Ariz. 467, 773 P.2d 1026. Review was granted, and cases were consolidated. The Supreme Court, Gordon, C.J., held that deannexation statute violated constitutional prohibition against special or local law when general law can be made applicable.

Earl, Baird & Williams by Daryl M. Williams, Phoenix, for Republic Inv. Fund I.

Head & McCoy by Robert D. McCoy, Phoenix, for Town of Surprise and Maricopa County.

Shelley & Behea by J. LaMar Shelley, Mesa, for League of Ariz. Cities and Towns.

Snell & Wilmer by Lonnie J. Williams, Jr., Jeffrey Messing, Phoenix, Sidley & Austin, by Rex E. Lee, Joseph R. Guerra,

Washington, D.C., for petitioners for Deannexation.

Richard M. Romley, Maricopa County Atty., John W. Paulsen, Maricopa Deputy County Atty., Phoenix, for Maricopa County.

Bill Stephens & Associates by David P. Matheson, Richard A. Alcorn, Phoenix, for City of Goodyear, Max McCully, Wanda Sanders and Gail Piggett.

## OPINION

GORDON, Chief Justice.

These two cases, consolidated for our review, raise the issue of the constitutionality of the Arizona deannexation law, former version A.R.S. § 9–471 (Laws 1986 Ch. 45, § 4, as amended by Laws 1986 Ch. 414, § 1). The municipalities involved in both cases claim the statute is unconstitutional as a prohibited special or local law under Ariz. Const. art. 4, pt. 2, § 19(20), which provides:

No local or special laws shall be enacted in any of the following cases, that is to say:

   \*    \*    \*    \*    \*    \*

20. When a general law can be made applicable.

The two divisions of the court of appeals reached opposite results, reflecting the confusion in this area. We granted review to resolve the conflict. See Rule 23(f), Ariz.R. Civ.App.P., 17B A.R.S. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24. We approve the Division One opinion in Petitioners for Deannexation v. Goodyear, 160 Ariz. 467, 773 P.2d 1026 (App.1989), adopt much of its reasoning, and refer to that opinion where possible to avoid duplication. We vacate the Division Two memorandum decision in Republic Investment Fund I v. Surprise (2 CA–CV 88–0216, Nov. 15, 1988) and the Superior Court's order of deannexation.

## FACTUAL AND PROCEDURAL HISTORY

In 1978 the Town of Surprise (Surprise) annexed territory, pursuant to the then existing version of A.R.S. § 9–471, consisting of a ten-foot wide strip of land surrounding an area of approximately 21 square miles. The annexation effectively created an island of unincorporated land within the town's border. Part of the annexed property was acquired by Republic Investment Fund I in April 1987. Republic Investment subsequently petitioned the superior court to deannex its property from Surprise. Surprise challenged the deannexation statute's constitutionality and the sufficiency of Republic Investment's petition. The superior court entered a deannexation order. Surprise appealed and the court of appeals, Division Two, affirmed, holding that the deannexation statute did not violate Ariz. Const. art. 4, pt. 2, § 19. The court cited its earlier decision in Picture Rocks Fire Dist. v. Pima County, 152 Ariz. 442, 733 P.2d 639 (App.1987), to support its finding.

In the second case before us, Petitioners for Deannexation sought statutory deannexation from the City of Goodyear. Goodyear moved to dismiss the petition to deannex, claiming the law was unconstitutional because, among other reasons, it violated the local or special law prohibition of Ariz. Const. art. 4, pt. 2, § 19. The trial judge denied Goodyear's motion to dismiss and the court of appeals denied jurisdiction of Goodyear's petition for special action relief. This Court denied Goodyear's petition for review. The trial court then upheld the constitutionality of the deannexation statute, based on Picture Rocks. Goodyear appealed and the Court of Appeals, Division One, reversed. Petitioners for Deannexation, 160 Ariz. 467, 773 P.2d 1026 (App.1989).

## HISTORICAL BACKGROUND

The court of appeals' opinion in Petitioners for Deannexation, 160 Ariz. 467, 773 P.2d 1026 (App.1989), accurately sets out the historical background of the deannexation law. We review that history only briefly, as background for our decision.

In the 1970s and 1980s, a large number of Arizona cities and towns engaged in "strip" annexation. Many municipalities artificially extended their boundaries by an-

nexing long strips of property, sometimes only 10 feet wide. Such annexations had two general purposes: (1) to encompass, without actually incorporating, areas with potentially high tax values; and (2) to thwart neighboring municipalities from encroaching through similar actions. The legislature, in 1985, placed a statewide moratorium on all annexations and revised the annexation laws, making the statutory requirements for annexation more stringent. *See* A.R.S. § 9–471 (effective April 10, 1986). In recognition of past abuses, the legislature also enacted a provision permitting deannexation if certain conditions were met.

The original proposal for deannexation applied statewide. *See* H.B. 2189, 37th Legis., 2d Reg. Sess. (1986). As subsequently passed, however, the deannexation provisions were significantly narrower in scope:

A. The superior court shall order the deannexation of territory from a city or town *having a population of less than ten thousand persons according to the 1980 United States decennial census within a county having a population in excess of one million two hundred thousand persons according to the 1980 United States decennial census* and return the territory to the jurisdiction of the county if all of the following conditions are satisfied:

\* \* \* \* \* \*

(Emphasis added). *See* Senate Committee Amendments to H.B. 2189, Mar. 21, 1986, at 3. As enacted, the bill only affected thirteen cities within Maricopa County.[1]

After the Governor signed the bill, it was further amended to provide that deannexation applied only to cities and towns having a population less than eleven thousand according to the last special United States census and required that petitions for deannexation pursuant to the act be filed before September 1, 1987. *See* Conference Committee Amendments to H.B. 2217, May 5, 1986, at 1. This resulted in the exclusion of Gilbert from the original list of cities affected and limited the application period to thirteen months.

## DISCUSSION

Both petitions for review ask us to determine whether the deannexation statute is a special or local law in violation of Ariz. Const. art. 4, pt. 2, § 19(20). Because this issue is dispositive, we do not reach the other issues raised in either petition for review.

### A. *Propriety of Review*

■ Deannexation proponents[2] assert that, for purposes of challenges under the Arizona Constitution, art. 4, pt. 2, § 19(20), the legislature, not the courts, is the sole judge of whether a general law can be made applicable, citing *Valley Nat'l Bank v. Glover*, 62 Ariz. 538, 159 P.2d 292 (1945); *Prescott v. O'Sullivan*, 46 Ariz. 551, 53 P.2d 69 (1935). They argue that the legislature is the appropriate governmental branch to decide which form economic regulation will take, especially where policy decisions involving compromise and line-drawing are involved. Accordingly, deannexation proponents claim, courts must not arrogate to themselves such a legislative function.

Goodyear counters that the court's enforcement of the special/local law prohibitions does not equate with the court's sitting as a "superlegislature." Judicial scrutiny and control are clearly appropriate where legislative favoritism might impair rights guaranteed to municipalities.

■ In this case, the court may properly review the constitutionality of the deannexation statute. Although we recognize the legislature's role and generally will defer to the legislature on decisions regarding

1. Those thirteen cities included: Avondale, Buckeye, Carefree, Cave Creek, El Mirage, Gila Bend, Gilbert, Goodyear, Guadalupe, Surprise, Tolleson, Wickenberg, and Youngtown.

2. We refer to Republic Investment Fund I and the Petitioners for Deannexation jointly as "deannexation proponents." We also refer to the Town of Surprise and the City of Goodyear as "municipalities" where possible for convenience and brevity.

whether a general law will apply, the court's role is to evaluate whether a statute has a valid legislative purpose, is arbitrary, or whether the legislature abused its discretion. *See, e.g., Hernandez v. Frohmiller*, 68 Ariz. 242, 257–58, 204 P.2d 854, 864–65 (1949); *Glover*, 62 Ariz. at 560, 159 P.2d at 301.

■ A strong presumption in favor of a statute's constitutionality exists. *Eastin v. Broomfield*, 116 Ariz. 576, 570 P.2d 744 (1977). In doubtful cases, courts generally defer to legislative determinations of policy. 2 N. Singer, *Sutherland Statutes & Statutory Construction* § 40.09, at 233 (4th ed. 1986) (hereafter *Sutherland's*). Nonetheless, courts will not refrain from declaring a legislative act an unconstitutional special or local law when the facts so require. *See Petitioners for Deannexation v. City of Goodyear*, 160 Ariz. at 472, 773 P.2d at 1031, and citations therein. An act, even though general in form, will be treated as a special act if that is its effect. *Sutherland's* § 40.02; *see also* 2 E. McQuillan, *The Law of Municipal Corporations* § 4.50, at 125 (3rd ed. 1988) ("Whether a statute is general or special depends on its substance and practical operation, rather than on its title, form or phraseology.").

The deannexation statute, as amended, affected a limited class for a limited period of time. This calls into question the constitutionality of the statute and review by this court is therefore proper.

## B. *Equal Protection vs. Special/Local Law Challenges*

Goodyear Petitioners for Deannexation claim that the municipalities' complaint is properly characterized as an equal protection, not a special/local law, challenge. They argue that the statute discriminates in favor of other cities and towns rather than discriminating against a select group. Thus, they assert, the municipalities' claim must be categorized as a violation of Arizona's equal protection clause. Goodyear Petitioners argue the municipalities' claim must therefore fail because municipalities are expressly excluded from the State's equal protection clause. *See* Ariz. Const. art. 2, § 13.

Goodyear counters that the deannexation statute is a special/local law because it grants an immunity to many cities and towns by excluding them from the class subject to deannexation. Similarly situated municipalities, therefore, receive a benefit not available to members of the class affected by the statute.

■ This court distinguishes between the equal protection and special/local law provisions of the Arizona Constitution:

> Although similar policies are involved, constitutional prohibitions against special legislation serve a purpose distinguishable from equal protection provisions. Equal protection is denied when the state unreasonably discriminates *against* a person or class. Prohibited special legislation, on the other hand, unreasonably and arbitrarily discriminates *in favor of* a person or class by granting them a special or exclusive immunity, privilege, or franchise.

*Arizona Downs v. Arizona Horsemen's Foundation*, 130 Ariz. 550, 557, 637 P.2d 1053, 1060 (1981) (emphasis in original). A statute may be challenged under each provision individually. *Id.* (quoting *Illinois Polygraph Soc'y v. Pellicano*, 83 Ill.2d 130, 138, 46 Ill.Dec. 574, 579, 414 N.E.2d 458, 463 (1980)).

■ The deannexation statute clearly is intended to remedy problems arising from the abusive annexation practices. However, because the statute is limited in application to 12 small cities and towns in Maricopa County, it not only discriminates *against* those small municipalities, but also discriminates *in favor of* larger municipalities in Maricopa County, as well as all cities and towns in other counties. On its factual basis alone, therefore, the statute could be attacked as both violative of equal protection and as unconstitutional special legislation because it denies a benefit to one class while conferring a benefit on another. Even if the statute could survive an equal protection challenge, as deannexation proponents claim, the statute may still be chal-

lenged under the special/local law prohibitions. We therefore clarify the standard of review in order to distinguish special/local law analysis from equal protection analysis.

### C. *Standard for Review*

#### 1. Need for different standard

Deannexation proponents contend that legislation constitutional under equal protection analysis is also constitutional under special/local law analysis. They assert that the only test we must apply is whether the deannexation law is rationally related to a legitimate legislative purpose. Goodyear and Surprise counter that, although a rational basis for the legislation must exist, the analysis proposed by deannexation proponents does not go far enough. The municipalities argue that *Arizona Downs* set forth the proper standard to test a statute's constitutionality, and that under the articulated test, the deannexation statute is unconstitutional.

█ A statute may withstand equal protection review, yet still be found unconstitutional under the special/local law provision. *See State v. Levy's,* 119 Ariz. 191, 192, 580 P.2d 329, 330 (1978); 2 E. McQuillan, *supra,* § 4.19, at 59 ("A violation of the state prohibition against local or special laws is not necessarily a violation of [the equal protection] constitutional provision, since the former is more comprehensive than the latter."); J. Winters, *State Constitutional Limitations on Solutions of Metropolitan Area Problems* 83–84 (1961) (justifications for special law prohibitions encompass more than equality). A different and heightened standard of review is necessary because the two provisions were promulgated to address different evils. Our constitution's framers were well aware of the dangers inherent in special legislation. By including proscriptions against special laws, they sought to avoid the evils created by a patchwork type of legal system where some laws applied in a few

locations while others applied elsewhere. The legislature may classify, but it cannot make a classification based on a decision that a law should apply to a particular individual or group. Rather, the legislature must enact laws that apply to all individuals who may benefit from its attempt to remedy a particular evil. Accordingly, we consistently review challenges under the equal protection and special/local law provisions separately. *See Arizona Downs,* 130 Ariz. 550, 637 P.2d 1053; *Levy's,* 119 Ariz. 191, 580 P.2d 329.

#### 2. The special/local law test

█ Although the constitutional analysis under both provisions begins in the same manner, the analysis under the special/local law provision encompasses more than an assessment of the statute's rational relationship to a legitimate legislative purpose. Looking to earlier opinions of this Court, the Court of Appeals, Division One, phrased the test for analysis under the special law provision as follows:

> [T]he court must first ascertain whether the law has a rational relationship to a legitimate legislative objective. If it does not, of course, our inquiry is over. But if it does, we must further decide if the act legitimately classifies by population, geography, or time limitations. If we find a legitimate classification, we must then determine if the act permits other individuals or entities to come within the class, and thus within operation of the law, within a reasonable time, or if at all. 160 Ariz. at 472, 773 P.2d at 1031 (citations omitted).

To determine whether a law is a general law, as opposed to a special or local law, therefore, we consider two factors in addition to whether the classification has a reasonable basis: (1) whether the classification encompasses all members of the relevant class; and (2) whether the class is elastic, allowing members to move into and out of the class. *Arizona Downs,* 130 Ariz. at 557–58, 637 P.2d at 1060–61.[3]

---

**3.** We note that *Picture Rocks,* on which Division Two relied, did not specifically apply the three standards first set out in *Arizona Downs* and

clarified here. Instead, its analysis concentrated only on the rational basis standard. Nevertheless, this court denied review in *Picture*

### a. *Legitimacy of Classification*

A statute conferring rights and privileges or imposing restrictions on persons, places or things as a class is a general law, while a statute relating to particular persons, places or things of a class is a special or local law. *Arizona Downs*, 130 Ariz. at 557, 637 P.2d at 1060. The constitutional prohibition against special or local laws when a general law could apply does not prohibit classification entirely. To be general, a law need not operate on every person, place, or thing within the state; however, it must apply uniformly to all cases and to all members within the circumstances provided for by the law. *Arizona Downs*, 130 Ariz. at 558, 637 P.2d at 1061. In other words, it must, as Division One noted, encompass a legitimate classification by population, geography, or time limitations. *Petitioners for Deannexation*, 160 Ariz. at 472, 773 P.2d at 1031. A law may be general and still apply to only one entity, if that entity is the only member of a legitimate class. *See generally* 2 E. McQuillan, *supra*, § 4.44, at 109 ("[A] general law may operate only in a particular county and only affect a small group of persons at the time of its enactment.... [T]he statute must apply equally to all in a similar situation coming within its scope.").

### b. *Elasticity of Classification*

A statute is special or local if it is worded such that its scope is limited to a particular case and it "looks to no broader application in the future."[4] *Arizona Downs*, 130 Ariz. at 558, 637 P.2d at 1061; *see also Barbee v. Holbrook*, 91 Ariz. 263, 265, 371 P.2d 886, 888 (1962); *Luhrs v. City of Phoenix*, 52 Ariz. 438, 451, 83 P.2d 283, 289 (1938). To be general, the classification must be elastic, or open, not only to admit entry of additional persons, places, or things attaining the requisite characteristics, but also to enable others to exit the statute's coverage when they no longer have those characteristics. *Sutherland's*, § 40.09, at 233; *see also Barbee*, 91 Ariz. 263, 371 P.2d 886; *Luhrs*, 52 Ariz. at 451, 83 P.2d at 289; *City of Prescott v. O'Sullivan*, 46 Ariz. 551, 555, 53 P.2d 69 (1935). As Division One noted, this court forecast the requirement for a general law almost a century ago:

> A classification of cities may be made, based upon population; ... And this even though but one city in the state or territory comes within the provisions of the statute at the time of its enactment. *But the statute must be elastic, so that other cities may, as they attain the requisite conditions, come within the operation of the statute.* We think the rule may safely be stated to be that the classification of municipalities, and the incidental imposition of different obligations and granting of different powers to them according to such classification, must be such that other municipalities may, upon the attainment of the conditions characterizing any particular class, enter that class, and the conditions themselves must be not only possible, but reasonably probable, of attainment.

*Petitioners for Deannexation*, 160 Ariz. at 471, 773 P.2d at 1030 (quoting *Bravin v. Mayor and Common Council*, 4 Ariz. 83, 89–90, 33 P. 589 (1893)) (emphasis added).

A statute worded so as to admit entry and exit from the class implies that the class formation was separate from consideration of particular persons, places, or

---

*Rocks.* Although we agree with the result reached in that case, we disapprove of the court's limited reasoning. Even if the court of appeals had applied the three-part test used for special/local law analysis, the statute in *Picture Rocks* would have been found constitutional. Thus, *Picture Rocks* did not compel the result reached by Division Two of the court of appeals in *Republic Investment Fund I v. Town of Surprise*.

**4.** Republic Investment argues that the elasticity requirement only applies when a classification involves no more than one entity, interpreting the phrase "particular case" very narrowly. It argues that our earlier cases addressing elasticity involved situations where the classification encompassed only one city. We decline to adopt so narrow an interpretation. As we noted above, a law may be general and apply to only one entity, *if* that entity is the only member of a class, and a law may be special even if it applies to more than one entity when it applies to less than the entire class.

things and, thus, not intended as special or local in operation. J. Winters, *supra*, at 93. Although the number in the class is not determinative, as that number decreases in size, courts are more likely to find the classification invalid. *Id.* A classification limited to a population as of a particular census or date is a typical form of defective closed class; such an act is a form of identification, not of classification, because it is impossible for entities to enter or exit the class with changes in population. *Id.; Sutherland's*, § 40.09, at 233. To decide whether a statute legitimately classifies, we will consider the actual probability that others will come under the act's operation when the population changes. Where the prospect is only theoretical, and not probable, we will find the act special or local in nature. *Bravin*, 4 Ariz. at 90, 33 P. 589; *Sutherland's* § 40.09, at 432–33.

### D. Does the Deannexation Law Violate the Special/Local Law Prohibition?

■ Applying these standards to the deannexation statute, we approve Division One's opinion in *Petitioners for Deannexation* and hold that the statute is a special or local law. Although the statute may be rationally related to a legitimate legislative objective, thus satisfying the equal protection test, the statute does not meet the remaining two special/local law standards.

As Division One noted, "the legislature might rationally perceive that areas annexed by small cities (population under 11,000) may have greater cause to deannex than those annexed to larger cities because of the smaller cities' inability to provide services." *Petitioners for Deannexation*, 160 Ariz. at 473, 773 P.2d at 1032. However, even if a rational basis exists, the deannexation statute is a special/local law. The statute was enacted in response to the abuse of the municipalities' power to strip annex. On that basis, the class affected by the statute should include all cities where annexation abuses may have occurred. Because the statute applies to only 12 cities within Maricopa County, it does not apply uniformly to all members of the class. Instead, the statute confers a benefit only on part of the class while immunizing larger cities in Maricopa County and all other similarly situated cities in other counties. Moreover, the statute's focus, limited to a particular census for only 13 months, prevents any municipality from either coming within or exiting from its operation in the future. Because a general law would have provided a remedy to individuals in all areas annexed by large or small cities within the state, as indicated by the original bill, the statute's limited application violates the special law prohibition.

The statute is not elastic, excludes similarly situated members of the class, and a general law could be made applicable. The deannexation statute, therefore, violates Ariz. Const. art. 4, pt. 2, § 19(20).

### E. Severability

■ Before we declare an entire statute unconstitutional, we apply the rule of severability. An entire statute need not be declared unconstitutional if constitutional portions can be separated. *Cohen v. State*, 121 Ariz. 6, 9, 588 P.2d 299, 302 (1978). The test for severability requires ascertaining legislative intent. If the deannexation provisions are severed, A.R.S. § 9–471 still provides comprehensive annexation procedures for Arizona and remains complete. We therefore conclude that the deannexation provisions are severable from the remainder of A.R.S. § 9–471 and the remaining sections remain in force.

### CONCLUSION

The deannexation statute is unconstitutional under the Arizona Constitution's prohibition against special or local laws where a general law can be made applicable. Even if the statute is deemed rationally related to a legitimate legislative objective, its limited application, both geographically and in length of time, means that the statute is a special/local law. The statute does not apply uniformly to all members of the class, nor does it permit entry or exit from the class. Furthermore, a general law could be made applicable. Because this issue is dispositive, we do not reach the

other issues raised in the petitions for review.

Memorandum decision of the Court of Appeals, Division Two, in *Republic Investment Fund I v. the Town of Surprise & Maricopa County* is vacated and the Superior Court's order of deannexation is reversed. Opinion of the Court of Appeals, Division One, in *Petitioners for Deannexation v. Goodyear* is approved.

FELDMAN, V.C.J., CAMERON and CORCORAN, JJ., and EDMUND G. NOYES, Superior Court Judge, Maricopa County, concur.

MOELLER, J., recused himself and did not participate in this decision; pursuant to Ariz. Const. art. 6, § 3, EDMUND G. NOYES, Maricopa County Superior Court Judge, was designated to sit in his stead.